UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MARIUS SORBELLO,

     Petitioner,

 -against-

PAUL M. LAIRD, Warden,

     Respondent.

-----------------------------------------------------------X

FOR ONLINE PUBLICATION ONLY

MEMORANDUM
AND ORDER

06 CV 948 (JG)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 2 8 2006 ★

**BROOKLYN OFFICE**

A P P E A R A N C E S :

FEDERAL DEFENDERS OF NEW YORK, INC.
  52 Duane Street, 10th Floor
  New York, NY 10007
By: Darrell B. Fields
  Attorneys for Petitioner

ROSLYNN R. MAUSKOPF
  United States Attorney
  Eastern District of New York
  147 Pierrepont Street
  Brooklyn, NY 11201
By: Elizabeth A. Geddes
  Attorneys for Respondent

JOHN GLEESON, United States District Judge:

    Marius Sorbello and other inmates at the Metropolitan Detention Center ("MDC")

in Brooklyn bring habeas corpus petitions pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 2243. I

consolidated the cases and appointed counsel for Sorbello, whose petition is representative. Oral

argument was held on February 6, 2007, and a further telephone conference with counsel for

Sorbello and the government was held on February 21, 2007. With the able assistance of

counsel for both sides, for which I am grateful, I now decide Sorbello's petition in this

Memorandum and Order. I will decide the other petitions separately.

Sorbello claims the MDC has not followed the holding of *Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006), that "in transferring an inmate to a [community corrections center ("CCC")[1]] . . . the [Bureau of Prisons ("BOP")] must consider the factors set forth in [18 U.S.C.] § 3621(b), without reference to 28 C.F.R. § 570.21." He applies for a writ of mandamus or comparable relief, asking that I direct the MDC to, in good faith, consider him for transfer to a CCC in accordance with an old BOP policy that is in compliance with *Levine*. The government argued that the petition is moot because the MDC is already in compliance with *Levine*, having reinstituted its former policy. For the reasons set forth below, I have rejected the government's argument. The government and Sorbello have since entered into a stipulation of settlement, and I also "so order" that stipulation.

## BACKGROUND

A.    *The Decision in* Levine

*Levine* addressed the BOP's authority to place federal prisoners in CCCs for a "reasonable part, not to exceed six months, of the last 10 per centum of the term" of their imprisonment. 18 U.S.C. § 3624(c).[2] The regulation at issue in *Levine* provided that the BOP

---

[1]    *I.e.,* a halfway house. *See* 455 F.3d at 73; *see also* 28 C.F.R. § 570.20. The government informs me that these institutions are now referred to as Residential Re-Entry Centers. Government's Response in Opposition to Petitioners' Applications for Writs of Habeas Corpus 4. For consistency with *Levine*, I refer to them as CCCs.

[2]    That provision states:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community . . . .

18 U.S.C. § 3624(c).

"will designate inmates to community confinement[3] *only* as part of pre-release custody and

programming, during the last ten percent of the prison sentence being served, not to exceed six

months." 28 C.F.R. § 570.21 (emphasis added). The Second Circuit reversed the denial of a

petition for a writ of habeas corpus challenging the validity of 28 C.F.R. § 570.21, holding that

that regulation's ten-percent/six-month categorical limitation on the time period in which the

BOP will consider inmates for community confinement exceeded the agency's rulemaking

authority pursuant to the "clear parameters" of 18 U.S.C. § 3621(b).[4] *Levine*, 455 F.3d at 87.

The latter statute sets forth factors the BOP must consider in addition to "the

portion of time served" in determining the place of imprisonment. *Id.* In particular, § 3621(b)

provides in relevant part that the BOP

> may designate any available penal or correctional facility . . . that the Bureau
> determines to be appropriate and suitable, considering --
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence --
>  (A) concerning the purposes for which the sentence to imprisonment was
>  determined to be warranted; or
>  (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission . . . .
> The Bureau may at any time, having regard for the same matters, direct the
> transfer of a prisoner from one penal or correctional facility to another.

---

[3] Placement in CCCs is a type of "community confinement." 28 C.F.R. § 570.20.

[4] Such a categorical limitation is not authorized by 18 U.S.C. § 3624(c). That statute regulates when a prisoner shall be *placed* in community confinement, not when the prisoner's eligibility for such placement shall be *considered*. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 250 (3d Cir. 2005). To the extent the boilerplate petitions here suggest an entitlement to placement for a period of six months, any such claim must be properly exhausted and thus is not properly before this Court.

18 U.S.C. § 3621(b). Following *Levine*, then, there shall be no categorical ten-percent/six-month ceiling on when the BOP will decide whether an inmate should be placed in community confinement.

B.    *Subsequent Challenges*

After *Levine*, habeas challenges to the validity of 28 C.F.R. § 570.21 have been dismissed as moot in this Circuit. In *White v. Apker*, 445 F. Supp. 2d 397, 398 (S.D.N.Y. 2006), for example, the government notified the district court that "an interim directive" had been issued "directing BOP staff in the Second Circuit to make CCC placement decisions without reference to § 570.21." Instead, the government represented, BOP staff now apply Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998) ("Program Statement"). *Id.*[5] The Program Statement represents the policy in effect prior to December 2002, when the policy later promulgated as 28 C.F.R. § 570.21 went into effect. *See Levine*, 455 F.3d at 75.

The Program Statement makes no reference to a six-month/ten-percent ceiling on the time period in which the BOP shall consider an inmate's eligibility for CCC placement.[6] Rather, that document provides that "[s]taff shall begin release planning at an inmate's first team

---

[5]    *See also, e.g., Squitieri v. Apker*, No. 06 Civ. 3884 (NRB), 2006 WL 2521412, at *1 (Aug. 31, 2006) ("Following the Second Circuit's decision in [*Levine*], the BOP issued Program Statement 7310.4, reinstating the regime in existence before the enactment of the challenged regulation. The Government has represented that under the post-*Levine* procedures now in place, plaintiff's request for placement in a community corrections center will be considered without reference to [28 C.F.R. § 570.21], as he requested."); *Nikolis v. Morrison*, No. 06 Civ. 103, 2007 WL 136241, at * 1 (Jan. 15, 2007) ("In response to *Levine*, the BOP has issued a directive to guide its staff with respect to CCC placement decisions. Specifically, in making CCC designation determinations, the BOP now operates under Program Statement 7310.04, the program that guided decision-making prior to the invalid implementation of the February 2005 BOP rule.").

[6]    Indeed, Sorbello asserts that it was BOP policy before 28 C.F.R. § 570.21 and its predecessor were in effect "to transfer inmates to halfway house[s] for the last six months of the inmate's sentence, regardless of the length of the sentence of the inmate." Pet. 2.

meeting, normally the initial classification, and shall continue throughout the inmate's confinement." Program Statement 7. The document states two relevant timing "guidelines" for determining a plan of release into a CCC:

> a. Planning *early in an inmate's period of confinement* is necessary to ensure release preparation needs are identified and appropriate release preparation programs are recommended.
> . . .
> c. A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting *no later than 11 to 13 months before an inmate's projected release date.*

*Id.* (emphases added). Under the Program Statement, not only is consideration of eligibility divorced from the six-month/ten-percent ceiling held invalid by *Levine*, but the BOP can place inmates in CCCs for periods greater than the final ten percent of their term of incarceration "or more than six months, if appropriate." *Id.* at 4.[7]

C.    *The Petitioners*

Petitioners are inmates at the MDC who claim they are entitled to a designation to community confinement. Marius Sorbello is representative. Sorbello filed his petition on December 14, 2006. He is serving a 27 month term of imprisonment. Memorandum of Law in Support of a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 at 6. He surrendered voluntarily on October 7, 2005, and his projected release date is September 17, 2007. *Id.* Sorbello states that his pre-*Levine* CCC placement date was July 9, 2007. Pet. 4.

D.    *The Government's Representations*

The government represents that, "[i]n accordance with *Levine*," the MDC no longer applies 28 C.F.R. § 570.21 but rather "may place an inmate in a CCC for more than the

---

[7]    The BOP takes the position in the Program Statement that a ten-percent/six-month limit on placement is not mandated by 18 U.S.C. § 3624(c). *See* Program Statement 4.

last ten per centum of his or her term, or more than six months, if appropriate." Government's Response in Opposition to Petitioners' Applications for Writs of Habeas Corpus ("Gov't Br.") 4. In support, the government cites a declaration by Jennifer Dannels, Staff Attorney at the MDC. *See id.* That declaration states that "MDC Brooklyn has recommended that all Petitioners be placed in a [CCC] in accordance with [*Levine*]." Dannels Decl. ¶ 64, Jan. 18, 2007. By so doing, Dannels claims, "MDC Brooklyn staff acted according to [the Program Statement], the policy effective prior to the invalidated regulations and the December 2002 policy change, when making the [CCC] designation referrals at issue in this Petition." *Id.*

As to Sorbello, the government claims "the warden at MDC has not yet recommended a date for his placement in [a CCC], a recommendation will be made in accordance with *Levine* once his Unit Team at MDC has received all of the relevant paperwork . . . ." Gov't Br. 5 (citing Dannels Decl. ¶ 5, Jan. 18, 2007). In any event, the recommended designation "will be made at least 60 days prior to July 9, 2007." *Id.* That date is the date upon which Sorbello "would have served all but 10 percent of his sentence." *Id.* (citing Dannels Decl. ¶ 4, Jan. 18, 2007).

The government has made similar representations about when the designation of certain other petitioners will occur -- all "at least 60 days prior to" the period when ten percent of the term of incarceration remains. Dannels Decl. ¶ 21, Jan. 18, 2007 (Wittlin); *id.* ¶ 45 (Luparella); *id.* ¶ 49 (Sullivan); *id.* ¶ 53 (Pratt); *id.* ¶ 57 (Swaap). Other petitioners' designations have already occurred -- Northeimer, for example, has been designated for community confinement beginning April 2, 2007, which date is before his "10% date" of May 7, 2007. *Id.*

6

¶¶ 10-11. *See also id.* ¶ 16 (Spencer); *id.* ¶ 25 (Santiago); *id.* ¶ 30 (Dillard); *id.* ¶ 35 (Moise); *id.* ¶ 40 (Philbin); *id.* ¶ 61 (Taylor). It is not clear when those designations were made.

## DISCUSSION

This is in essence a dispute about what policy the MDC is following in designating inmates to CCCs.[8] Sorbello claims that the MDC has not returned to the policy outlined in the Program Statement. Sorbello also claims that the MDC is still following 28 C.F.R. § 570.21, in violation of *Levine. See* Pet. 4. As it argued in the similar cases mentioned above, the government maintained here that the MDC *is* following the Program Statement, and therefore that the petition is moot.[9]

A.    *Mootness*

A mootness dispute presents the question "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) (citing Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *13A Federal Practice & Procedure* § 3533 (2d ed. 1984)). To the extent there is no such prospect, there is no federal question for review. *See*

---

[8]    The government initially suggested that I dismiss the petitions for failure to exhaust administrative remedies. But the exhaustion requirement for § 2241 petitions is "prudential, not statutory." *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005). Besides, if I were to dismiss the petitions on exhaustion grounds, the pursuit of an administrative remedy would likely be futile (the MDC is not likely to change its mind that the applications are moot in an administrative setting) and would in some cases result in the irreparable harm of late designation to community confinement (the designation of some petitioners, including Sorbello, is already overdue, *see infra*).

[9]    The government has not challenged the propriety of the vehicle of Sorbello's petition pursuant to 28 U.S.C. § 2241. As the challenge concerns the "execution" of his sentence -- in particular, the timing of BOP's consideration of when Sorbello is eligible for a CCC transfer -- § 2241 is the correct vehicle for the claim. *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997); *see also Levine*, 455 F.3d at 77-78 ("We find that a habeas petition under 29 U.S.C. § 2241 was the proper vehicle to challenge confinement in a federal correctional center rather than a CCC.").

*North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[R]esolution of the question [of mootness] is essential if federal courts are to function within their constitutional sphere of authority.").

The responding party carries the "heavy" burden of establishing mootness -- "that there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (internal quotation marks and footnote citation omitted). When, as here, a party urges "voluntary cessation" as a basis for mootness there is an especially "formidable" burden. *N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003). In the administrative context, an agency can moot a request for relief by showing that the policy complained of has been replaced and that "there appears to be no likelihood of a return to the old rule." *McKenna v. Peekskill Hous. Auth.*, 647 F.2d 332, 334 (2d Cir. 1981); *see also Levine*, 455 F.3d at 79. On the other hand, if the agency cannot counter an argument "that the policy is not being enforced," it cannot sustain its burden. *Davis v. New York*, 316 F.3d 93, 99 (2d Cir. 2002) (prisoner's claim for injunctive relief from second-hand smoke not moot despite defendants' implementation of "a new, restrictive smoking policy").

I concluded that the government did not meet its burden to demonstrate mootness. The government claimed that MDC policy is currently "[i]n accordance with *Levine*" because it is following the reenacted Program Statement, not the regulation held invalid by *Levine*. Gov't Br. 4. But the government's own schedule for the petitioners' designations to community confinement undermined this claim. For those petitioners who have not yet received designations, the warden will apparently recommend a designation "at least 60 days" before ten percent of petitioners' terms of imprisonment remains. *See, e.g.*, Dannels Decl. ¶ 5, Jan. 18, 2007 (Sorbello). The ten percent period is, of course, not relevant to designations pursuant to the

8

Program Statement. Program Statement guidelines make it "necessary" to plan CCC transfer "early in an inmate's period of confinement;" the determination of "[a] final and specific release preparation plan, including a decision as to CCC referral" shall "normally" take place "no later than 11 to 13 months before an inmate's projected release date." Program Statement 7.

Indeed, when measured by the latter guideline, at least three petitioners' designations are overdue. Sorbello's release date, for example, is September 17, 2007. His designation should therefore have taken place "no later than" October 17, 2006.[10] *See also* Dannels Decl. ¶ 47, Jan. 18, 2007 (indicating a release date for Sullivan of October 20, 2007); *id.* ¶ 51 (indicating a release date for Pratt of November 18, 2007).[11] The government explained the late designation of Sorbello by stating that it had not yet "receive[d] all the relevant and necessary paperwork," *id.* ¶ 5, but the government did not show why this paperwork could not have been received earlier in the period of confinement, or attempt to excuse the other late designations.

At the very least, then, the government failed to counter Sorbello's claim that it is not enforcing the Program Statement. In fact, the government's repeated references to a deadline for designation decisions of 60 days prior to the ten percent date provide some evidence for Sorbello's claim that the MDC is still following the pre-*Levine* regime of 28 C.F.R. § 570.21. *See Comer v. Cisneros*, 37 F.3d 775, 799-801 (2d Cir. 1994) (party did not carry burden of demonstrating mootness when there was "some evidence" that the complained-of behavior was

---

[10]    *Levine* was decided on July 10, 2006. 455 F.3d at 71.

[11]    Some time remains for the designation of petitioners Wittlin, Luparella, and Swaap -- the other petitioners whose designations are pending. Their release dates are February 28, 2008, September 4, 2008, and March 5, 2008, respectively. *See* Dannels Decl. ¶¶ 19, 43, 55, Jan. 18, 2007.

9

not discontinued). Dannels's declaration buttressed this hypothesis by stating that the MDC has "recommended" that placement take place in accordance with *Levine*. Dannels Decl. ¶ 64, Jan. 18, 2007. No mention was made of any formal policy implementation, notwithstanding the BOP's representations in prior proceedings on precisely this issue that an "interim directive" has been issued mandating a return to the Program Statment. *White v. Apker*, 445 F. Supp. 2d 397, 398 (S.D.N.Y. 2006). Accordingly, there is some support for the conclusion that 28 C.F.R. § 570.21 is alive and well at the MDC, or is at least influencing current policy in a significant way.

At oral argument, counsel for the government represented that the MDC's references to the ten-percent benchmark merely described a "drop dead date" by which overworked MDC employees must designate prisoners to community confinement. Tr. 6. Counsel reported that it is in part a lack of resources, not 28 C.F.R. § 570.21, that accounts for the vestigial presence of the ten percent date. *See id.* According to counsel, the MDC does not have the money or manpower to meet the Program Statement guidelines.

I take the government at its word that the MDC is attempting to follow the policies embodied in the Program Statement. And I do not question the diligence or work ethic of MDC employees. But the explanation that the MDC is unable to comply with the strictures of the Program Statement contradicts the government's claim that the MDC is "[i]n accordance with *Levine*" because it "has returned to the policy it employed prior to December 2002," *i.e.*, the Program Statement.[12] Gov't Br. 4. I therefore concluded that the petition is not moot.

---

[12]    The government also explained that the MDC, being an institution where relatively short sentences are served, faces compressed designation timing in a high volume of cases. *See* Tr. 4. But while the Program Statement must of course be flexible enough to cover inmates with terms shorter than one year, the government's explanation passed in the night with the MDC's continued adherence to the ten-percent benchmark. Moreover, as the government acknowledged, *see* Tr. 19, the explanation provided no excuse for the delayed designation of petitioners like Sorbello, who are serving sentences well over one year in duration.

B.    *The Stipulation of Settlement*

At oral argument on February 6, 2007, I suggested that Sorbello and the government attempt to resolve their differences by a consent decree. After discussions between counsel and a further conference by telephone with the Court on February 21, 2007, the parties have entered into a stipulation of settlement, Docket Entry 19, the relevant parts of which I copy below and now "so order":

IT IS HEREBY STIPULATED AND AGREED, by and between the parties as follows:

1.    The Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn") shall, in referring an inmate for community confinement in a Residential Reentry Center (RRC) (formerly known as a community corrections center), and until the Bureau of Prisons establishes a policy to the contrary, or until there is a change in the applicable law, in good faith:

(A)    consider the factors set forth in 18 U.S.C. § 3621(b), without reference to 28 C.F.R. § 570.21 as required by *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006), and
(B)    follow the Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998), and thus to the extent practicable, establish a final and specific release preparation plan at a team meeting no later than 11 to 13 months before an inmate's projected release date.

2.    MDC Brooklyn also agrees to determine a final and specific release preparation plan by March 9, 2007, for the following petitioners who are within 11 to 13 months of their projected release date: Marius Sorbello (55471-054), Andrew Swaap (13808-052), Robert Sullivan (13646-067), Corey Pratt (19522-057), and Jason Wittlin (12825-052).

CONCLUSION

Sorbello's petition is not moot.  The stipulation of settlement is "so ordered."

So ordered.

s/John Gleeson

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
      February 28, 2007